**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Tina Salata,

Plaintiff,

v.

Mesa Unified School District,

Defendant.

No. CV-24-01671-PHX-GMS

**ORDER**

Pending before the Court is Plaintiff's Supplemental Brief Regarding Remedies (Doc. 28) and Defendant's Response (Doc. 29). For the foregoing reasons, the requested remedies are granted in part and denied in part, and Plaintiff is permitted to file an application for attorneys' fees.

## BACKGROUND[1]

Plaintiff E.D. ("Student") is a minor child who resides with Tina Salata Decelles in Maricopa County, Arizona. (Doc. 27 at 1). This dispute arose while Student was attending Zaharis Elementary School in Defendant Mesa United School District ("the District"). (*Id.* at 2). Student has a disability and is entitled to special education and related services through the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq*. (*Id.* at 1). The statute's aim is to provide a free appropriate public education ("FAPE") to students with disabilities through Individual Education Programs ("IEPs"). (*Id.* at 2

[1] This background is limited to the information necessary to understand the instant briefing. For a more complete background, *see* Doc. 27.

(citing *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016))).

On March 31, 2026, this Court concluded that there was (1) a procedural violation of the IDEA when the District implemented a modified IEP without notice to Student's parents, (2) a material failure to implement required services for reading comprehension and basic reading of sight words, and (3) a material failure to provide physical therapy ("PT") and occupational therapy ("OT") services. (*Id.* at 11–20). The Court affirmed the administrative law judge's ("ALJ") determination that reimbursement for Student's unilateral placement would be improper. (*Id.* at 24).

To determine the appropriate remedies, the Court ordered supplemental briefing. (*Id.* at 24–25). The order stated:

> 1. Plaintiff shall file her supplemental brief on remedies by **<u>April 14, 2026</u>**. In her brief, which is not to exceed **<u>eight (8) pages</u>**, Plaintiff is directed to:
>     a. Identify her desired summer camp for summer 2026, provide the cost of the camp, and justify why two full weeks (rather than a shorter period, such as one full week) of a reimbursed program is appropriate;
>     b. Identify the credentialed teacher of her choice that will provide reading tutoring, provide the tutor's hourly rate, and justify why 20 hours (as opposed to some other figure) of compensatory relief is appropriate;
>     c. Identify with particularity the PT and OT services actually provided to her at Zaharis, as detailed in Student's Exhibit 78; and
>     d. Address whether she is the "prevailing party" in this action, such that attorney's fees should be awarded.
> 2. Defendant shall file its response to Plaintiff's brief on **<u>April 28, 2026</u>**. Defendant's response shall not exceed **<u>eight (8) pages</u>**.

(*Id.*) (emphasis in original).

## DISCUSSION

### I. Compensatory Education

"[T]he IDEA offers compensatory education as a remedy for the harm a student suffers while denied a FAPE." *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011). Compensatory education is an equitable remedy. *Id.*

Therefore, "equitable considerations are relevant in fashioning relief." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) (quoting *Sch. Comm. of Burlington v. Dep't. of Educ.*, 471 U.S. 359, 374 (1985) (alteration in original)).

The remedies must be designed to ensure the student receives an appropriate education, as defined in the IDEA. *Park ex rel. Park v. Anaheim Unified Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006). The Court's analysis must be fact-specific. *Parents of Student W.*, 31 F.3d at 1497. "The conduct of both parties must be reviewed to determine whether relief is appropriate." *Id.* at 1496 (internal citation omitted). Furthermore, the Court may, but is not obligated to, provide day-for-day compensation for time missed. *Park*, 464 F.3d at 1033.

### A. Summer Camp

The Court previously determined that summer camp would be an appropriate equitable remedy for the District's procedural violation of the IDEA. (Doc. 27 at 14). Plaintiff was directed to identify a specific summer camp, the cost, and justify why two full weeks, rather than a shorter period, was appropriate. (*Id.* at 25).

Plaintiff identified a day camp at the Jones-Gordon School. (Doc. 28 at 6). Plaintiff characterizes the camp as "a general education camp." (*Id.* at 7). However, Defendant opposes the selection of this camp because Jones-Gordon School is a "private dyslexia school," and thus may not provide Student with an educational setting with her non-disabled peers, as contemplated by the Court's previous order. (Doc. 29 at 2). However, the District provides no evidence that the camp is designed for or primarily attracts disabled students who attend the Jones-Gordon School during the school year. Correspondence with the Head of School at Jones-Gordon also states that the camps are "not special education programs" and that "[m]ost of the campers do not have disabilities." (Doc. 28-4 at 5). Therefore, the Court finds the selection of this camp appropriate.

The Court will award Student the costs for one week of summer camp. In the Supplemental Brief, Plaintiff now requests one week, and the District concedes one week of summer camp would be appropriate if the Court awards this remedy. (Doc. 28 at 7; Doc.

29 at 3). Therefore, the Court will award $400 for this remedy, the cost of one week of camp at the Jones-Gordon School. (Doc. 28-4 at 3).

As a part of this proposed remedy, Plaintiff also seeks funding for inclusion training for camp staff and aide support. (Doc. 28 at 6–7). Both requests are outside the scope of what the Court previously found necessary to remedy the procedural violation of the IDEA. (Doc. 27 at 14). Therefore, these requests are denied.

**B. Reading Tutoring**

The Court determined that Student is entitled to compensatory education to remedy the District's failure to provide Student with reading comprehension and sight word services. (Doc. 27 at 16–17). Plaintiff was directed to propose a credentialed teacher for reading tutoring, the rate, and justify why twenty hours is appropriate. (*Id.* at 25).

Plaintiff did not comply with the Court's request to propose a credentialed teacher for reading tutoring. (*See id.* at 25 (requiring Plaintiff to "[i]dentify the credentialed teacher")). Plaintiff selects Breakthrough Academy as its desired provider. (Doc. 28 at 5). The attached correspondence from Breakthrough Academy provides no details about the Academy's reading specialist's credentials. (Doc. 28-2 at 2–4). The correspondence merely asserts that the specialist is credentialed. (*Id.*). Information regarding the teacher's credentials was required by the Court's order. (Doc. 27 at 25). The information would have also assisted the Court in evaluating whether the proposed tutor would provide compensatory educational services, especially when the proposed provider charges high rates. (*See* Doc. 29 at 4 (stating that Plaintiff previously paid $40 per hour for reading tutoring, as compared to Breakthrough Academy's rate of $150 per hour)). When issuing an equitable remedy, the Court balances several interests, including providing an appropriate remedy to injury, avoiding overcompensation, and ensuring compliance with the Court's orders. Therefore, it will award $40 per hour for reading tutoring.

Plaintiff asserts that 29–30 hours of reading tutoring are appropriate. (Doc. 28 at 4). Plaintiff bases this number on a "quantitative analysis" of hours missed, plus two to

three additional hours of initial evaluation by the tutor. (*Id.* at 4). However, Plaintiff does not provide any citations to the record that allow the Court to verify this analysis. (*Id.*).

Nonetheless, the Court's independent review of the record comports with Plaintiff's calculations. Student was enrolled in the District for eighteen weeks. (Doc. 27 at 16). Student did not receive one hour per week of general education reading comprehension services, totaling eighteen hours of missed services. (*See id.* at 15–16). Student was also entitled to one hour per week of pull-out instruction in "sounding out cvc words and learning sight words." (*Id.* (quoting IR 124 at 19)). During those eighteen weeks, the District provided Student with two hours per week of pull-out services that included instruction in cvc words. (*Id.* at 16). However, Student did not receive any instruction in learning sight words. (*Id.*). The Court will presume for the purposes of calculating relief that the IEP entitled Student to thirty minutes of instruction per week in learning sight words. Thus, over Student's eighteen weeks of enrollment, she was entitled to nine hours of sight word instruction.

Here, the Court finds that hour-for-hour compensation is appropriate. *See Park*, 464 F.3d at 1033 (permitting courts to award day-by-day compensation if appropriate). The Court will award two hours for evaluation in this case to ensure Student receives effective services. Thus, Student is awarded funds for twenty-nine hours of tutoring at $40 per hour.

### C. PT and OT Services

Finally, the Court determined that the District failed to implement required PT and OT services. (Doc. 27 at 19). Plaintiff was directed to "identify with particularity the PT and OT services actually provided" so that the Court could award relief. (*Id.* at 20).

The parties calculated the PT and OT services owed and provided different calculations. (*Compare* Doc. 28 at 5–6 *with* Doc. 29 at 4–5). There are three primary differences. First, the District believes Student was entitled to 360 minutes of each service, while Plaintiff asserts she was entitled to 420 minutes. (Doc. 29 at 5; Doc. 28 at 6). Second, the District subtracted 22.5 minutes from the total because Student was absent on September 22, 2023. (Doc. 29 at 5). Finally, the District contends that a thirty-minute, co-

taught session of PT and OT should be considered as thirty minutes of each service, while Plaintiff contends that a co-taught session should be considered fifteen minutes of each service. (Doc. 29 at 5; Doc. 28 at 5–6).

The Court will consider the relevant period for this relief to be between August 3 and November 17, 2023. There are sixteen weeks between those dates, which entitles Student to 360 minutes of each service during the relevant period. The Court adopts this approach because Plaintiff stated that she seeks an award for "[t]he hours lost prior to November 14, 2023," as the ALJ previously awarded relief for services not provided from mid-November to December 2023. (Doc. 28 at 6). Furthermore, Plaintiff only identifies services provided through November 17, 2023. (*Id.* at 5–6). Plaintiff's assertion that Student was entitled to 420 minutes of services would require the relevant period to be approximately eighteen weeks, which is inconsistent with the cited portions of the brief. (*See id.*).

The Court will not lower relief on the basis of Student's absence on September 22. Plaintiff's IEP measures PT and OT services on a monthly, not daily, basis. (IR 124 at 19). The District also does not provide other evidence that suggests it would have been difficult to provide services on a different date in September due to Student's single absence. (*See* Doc. 29 at 5). Therefore, the Court finds it inequitable to lower relief on that basis.

Finally, the Court will consider the co-treating sessions as only providing fifteen minutes of each service for the purpose of calculating the appropriate remedy in this case. The Court rejects the District's argument for two reasons. First, the District does not provide new evidence that persuades the Court to discount its earlier finding that each co-treating session constituted fifteen minutes of each service. (Doc. 27 at 18–19). Second, even adopting the District's calculations, the District still failed to provide the Student with over two sessions each of PT and OT. (Doc. 29 at 5). Consistent with the Court's authority to consider the behavior of both parties, the Court concludes that the District's failure to provide PT and OT services in this case weighs in favor of a more generous award. *See Parents of Student W.*, 31 F.3d at 1496.

The parties also do not agree on the dates that services were provided. The Court identified discrepancies between the parties on the following dates: August 11, September 29, October 20, and November 17. (Doc. 28 at 5–6; Doc. 29 at 5). Thus, the Court conducted an independent review of the Medicaid billing records, as summarized below. (*See* IR 188 at 12–13). Many of the discrepancies arise from dates on which the providers billed with the code "NB – 99999." (*See id.*). The Court specifically required the Plaintiff to explain the meanings of the service codes, including NB – 99999. (Doc. 27 at 19–20). Plaintiff does not explain the meaning of this code in her briefing, nor does the cited webpage. (Doc. 28 at 5–6). Thus, the Court will accept the District's interpretation of those services codes in its calculation below.

| **Date** | **Minutes of PT Provided** | **Minutes of OT Provided** |
|---|---|---|
| 8/11 | 0 | 15 |
| 8/18 | 30 | 0 |
| 8/25 | 15 | 15 |
| 9/1 | 15 | 15 |
| 9/8 | 15 | 15 |
| 9/29 | 7.5 | 7.5 |
| 10/6 | 15 | 15 |
| 10/20 | 15 | 30 |
| 10/27 | 30 | 0 |
| 11/3 | 15 | 15 |
| 11/17 | 7.5 | 22.5 |
| **Minutes Provided** | **165** | **150** |
| **Minutes Missed** | 360 – 165 = **195** | 360 – 150 = **210** |

The District does not contest the propriety of Plaintiff's proposed providers, their rates, or the need for evaluation. (Doc. 29 at 5). Therefore, the Court will rely on the information Plaintiff provided regarding the cost of services. (Doc. 28-3). The Court will

award $690 for PT services and $885 for OT services. For PT services, this corresponds to an evaluation ($250) plus four sessions ($110/session), totaling 180–240 minutes. For OT services, this corresponds to an evaluation ($325) plus five 45-minute sessions ($112/session), totaling 225 minutes.

In sum, Plaintiff is awarded $3,135 for compensatory education: $400 for summer camp, $1,160 for reading tutoring, and $1,575 for PT and OT services. The amounts awarded are only to be spent on the specific services as designated by the Court. Such documentation shall be provided to the Defendant.

**II. Prevailing Party Status**

The IDEA provides that "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Thus, the Court has the discretion to award attorneys' fees if it finds that Plaintiff is the prevailing party.

A prevailing party is "a party which 'succeed[s] on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing the suit.'" *Park*, 464 F.3d at 1034 (internal citations omitted) (emphasis in original). Thus, "[a] parent need not succeed on every issue in order to be a prevailing party." *M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1201 (9th Cir. 2017). A prevailing party succeeds when the outcome materially alters the parties' legal relationship. *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007). In the IDEA context, a material alteration occurs when the prevailing party "require[s] the school district to do something it otherwise would not have to do." *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1233 (9th Cir. 2007) (citation modified).

Here, Plaintiff is the prevailing party. The Court determined that Student was denied a FAPE because the District committed a procedural violation of the IDEA and failed to provide required services. (Doc. 27 at 11–20). The denial of FAPE is "the most significant of successes possible under the Individuals with Disabilities Education Act." *Park*, 464

F.3d at 1036. Furthermore, the District is now required "to do something it otherwise would not have to do" by providing Student with compensatory educational services. *See V.S.*, 484 F.3d at 1233 (citation modified).

The District asserts that Plaintiff is not the prevailing party because the only successes were de minimis. (Doc. 29 at 6). The Ninth Circuit has stated that a party does not achieve prevailing party status if their "success is purely technical or de minimis." *Shapiro*, 374 F.3d at 865. "Nevertheless, it is also true that a party may be accorded prevailing party status by being awarded 'some relief by the court,' even if only an award of nominal damages." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603–04 (2001)).

Here, Plaintiff did not succeed on all issues raised at the administrative hearing or the District Court. (Doc. 27 at 9, 24). However, this does not negate Plaintiff's status as the prevailing party in this case. (Doc. 29 at 5–7). Plaintiff has succeeded on some of her claims, and her failure to receive all the requested remedies, including reimbursement for Student's unilateral placement at Tempe Montessori and training by Plaintiff's counsel[2] and an inclusion specialist, do not disqualify her. The Ninth Circuit has recognized a party as the prevailing party with more minimal successes. *See Van Duyn*, 502 F.3d at 825–26 (recognizing the plaintiff as the prevailing party at the administrative hearing when they succeeded on one of eleven issues). The District's arguments regarding Plaintiff's degree of success may be better suited for determining the appropriate size of the award. *See Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006). Plaintiff is the prevailing party, and the Court has discretion to award attorneys' fees under the IDEA.

[2] Plaintiff's counsel contends that she "did not 'require' that she personally train District staff" because it was already required by a previous settlement. (Doc. 28 at 3). However, the administrative complaint seeks equitable remedies including "an Order requiring in person legal training of Student's team." (IR 1 at 17). In a footnote describing the training, counsel states "[t]he *C.C.* settlement requires district-wide training but in person training would NOT required [sic] at Student's school [and]. . .[i]n person training is the best way to ensure delivery. . . . *This training is conducted by counsel for plaintiff* and Heather Pierson . . . ." (*Id.* (emphasis added)). Therefore, Plaintiff's counsel did seek to personally train Student's team, which was beyond what was already required by the settlement. (*See also* IR 68 at 54 (stating in her post-hearing brief that Plaintiff refused to settle because the District refused training by Amy Langerman), at 62–64 (seeking an order requiring in-person training by Amy Langerman and Heather Pierson at Zaharis Elementary)).

## CONCLUSION

The Court previously affirmed in part and reversed in part the ALJ's decision. (Doc. 27 at 24). After considering the supplemental briefing, the Court now awards Plaintiff $3,135 for compensatory education: $400 for summer camp, $1,160 for reading tutoring, and $1,575 for PT and OT services.

**IT IS THEREFORE ORDERED** that Plaintiff Tina Salata, parent on behalf of E.D., is awarded $3,135.00 for compensatory education. Documentation of the compensatory education expenses shall be provided to the Defendant.

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff make an application for attorneys' fees in accordance with Local Rule 54.2 within fourteen days of the entry of judgment in this action.

Dated this 30th day of October, 2026.

G. Murray Snow
Senior United States District Judge